ST. PATRICK'S CHURCH CORPORATION *vs*. FRANK K. DANIELS ET ALS.

First Judicial District, Hartford, March Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 3d—decided April 6th, 1931.

*John C. Blackall,* for the appellant (plaintiff).

*Jacob Schwolsky* and *Lucius F. Robinson, Jr.,* for the appellees (defendants).

HINMAN, J. By an Act approved June 19th, 1925 (Special Acts of 1925, p. 987) the common council of the city of Hartford was given authority to divide the municipality into districts and regulate the erection, construction, alteration, or use of buildings or structures and the use of land therein. It was provided, in § 3, that "such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; . . . to facilitate the adequate provision for transportation . . . and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability

for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality." It was provided (§ 1) that "such regulations may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained." Detailed provision was made for the appointment and duties of such a board, which shall hear and decide appeals from orders or decisions made by administrative officials and "all matters referred to it or upon which it shall be required to pass."

The zoning ordinance was approved February 9th, 1926, and has been amended from time to time. It provides, in Section III, as amended, that "In a business zone . . . no building or premises shall be used . . . for any of the following specified trades, industries or uses: . . . Motor vehicle parking station or storage and sale of used motor vehicles, except as permitted in Section XV." Section XV provides that "The board of appeals may in a specific case after public notice and hearing and subject to appropriate conditions and safeguards determine and vary the application of the regulations herein established in harmony with their general purpose and intent, as follows: . . . 13. Permit in a business zone the use of premises for a motor vehicle parking station or for the storage and sale of used motor vehicles."

The finding states that under these provisions William H. Russack applied to the board of appeals for permission to use a lot, on Church Street, in a business zone, for a parking station for automobiles. On December 3d, 1929, after due notice, the board heard the application and on December 12th voted to dis-

approve it. On June 11th, 1930, one Santora, as lessee of the same lot, applied for permission to use it for a parking station. At a meeting of the board of appeals held June 26th, it was voted "that the applicant be given permission to withdraw application as no additional evidence was submitted to the board for consideration since the former refusal of the board for such use at such location." No public hearing was held with respect to this application and the application was not pressed. At a meeting of the board held July 15th, the application of Santora again came before the board, and on July 29th the board voted as follows: "Approved for six months only, with provision that fence be erected separating this property and the school property; that all advertising on wall adjoining this property is to be removed; the wall painted and no other advertising put on this wall at any time. Station to be kept in a manner satisfactory to the board at all times. Certificate of Occupancy to be obtained."

From this action the appellant, which owns land with a parochial school thereon adjoining the lot in question and other land, a church edifice and other buildings in the vicinity, took an appeal to the Superior Court. That court, after full hearing as to the physical situation and other relevant facts, reached the conclusion that the granting of the permit was not, as claimed, illegal, unreasonable, or arbitrary or an abuse of discretion by the board of appeals. This was the controlling question before the trial court. *Holley* v. *Sunderland*, 110 Conn. 80, 147 Atl. 300. The soundness of this conclusion, when tested and measured by the facts set forth in the finding, is questioned by this appeal.

It appears from the vote of July 30th, 1930, that

the permission granted was limited in duration to six months from that time; this period had expired before the hearing in this court. It was stated in argument and has been stipulated that on January 15th, 1931, Santora made application for permission to continue the use of the lot as a parking station and on February 3d, 1931, the board of appeals granted such permission "with the provision that the station be maintained at all times satisfactory to the board." As the order which was appealed from has expired by lapse of time, this appeal has become academic as applied thereto; we determine it on its merits only because it embraces questions of some general interest and importance in the administration of zoning ordinances and regulations, which are numerous and steadily increasing in this jurisdiction.

The facts found relating to the situation of the premises in question, the uses made of other property, including the number of parking stations in the immediate vicinity, and the extent and urgency of the need for additional parking space outside of the highway limits are sufficient to sustain the conclusion of the trial court that the granting of the permit was not shown to be so lacking in factual support as to be subject to interference upon appeal. "Courts cannot set aside the decision of public officers in such a matter unless compelled to the conclusion that it has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow* v. *Cambridge,* 260 Mass. 441, 448, 157 N. E. 618, 620; *DeFlumeri* v. *Sunderland,* 109 Conn. 583, 145 Atl. 48.

The main dependence of the appellant is not upon this broad ground of attack, however, but is directed

to the course of the board in taking cognizance of and acting upon successive applications for the same privilege upon the same premises. This occasions an inquiry as to the powers and duties of the board of appeals (and other boards similarly constituted and empowered) regarding applications of the same tenor and relating to the same premises as others previously decided. The appellant's contention is that such repeated resort to the board is precluded or at least subject to reasonable limitations; otherwise, it is urged with reason, parties interested adversely to the privilege or modification sought may be unduly harrassed and injured through being called upon to contest repeated and frequently recurring agitations pertaining to the same subject-matter.

The situation here presented is not that which has most frequently been subjected to question in the courts—a reconsideration and reversal of decision upon the same application or appeal. As to this, it appears to be well established that a zoning board of appeals or adjustment should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence. *People ex rel. Swedish Hospital* v. *Leo,* 198 N. Y. Supp. 397; *People ex rel. Brennan* v. *Walsh,* 195 N. Y. Supp. 264; Baker, Legal Aspects of Zoning, p. 92. However, the power to reopen "should not be interpreted with too much refinement, nor should it be hedged about with technicalities, if, in the meantime, no rights have arisen which would be injured." Metzenbaum, Law of Zoning, p. 264. "Great difficulty might be experienced

by a hard and fast rule denying permission to rehear and modify [the board's] rulings; that is to say, in correcting matters which were overlooked and were of slight materiality, but which were capable of speedy and practical correction . . . . without prejudice to the rights of any one. . . . But the power to reconsider is not an arbitrary one and its exercise should be granted only when there is justification and good cause." *People ex rel. Brennan* v. *Walsh, supra,* p. 266; *McGarry* v. *Walsh,* 210 N. Y. Supp. 286; *Barker* v. *Boettger,* 208 N. Y. Supp. 295; 43 Corpus Juris, p. 356. The foregoing is sufficient to indicate the reasonable and recognized limitations upon reconsideration and alteration of orders or decisions of such boards upon an application or appeal.

A different question is involved here; it relates to the power and duty of the board to hear and determine successive applications pertaining to the same premises and seeking the same general privilege with respect thereto, and particularly the right of the board, upon a later application, to reverse or alter a decision rendered in a previous proceeding. As to this, the few judicial decisions which search discloses indicate that, in the absence of express regulation, the test to be applied is whether new or additional facts appear showing a change in conditions or other considerations materially affecting the merits, intervening since the former decision. For example, relief which had been denied in November, 1926, was granted in May, 1928, it being shown that the condition of property in the immediate vicinity had been changed in a manner militating against the objections formerly interposed. *Ficaro* v. *Walsh,* 235 N. Y. Supp. 254. See also *Riker* v. *Board of Standards and Appeals,* 234 N. Y. Supp. 42; *McGarry* v. *Walsh, supra.*

This criterion is in accord with the nature and functions of a board of appeals or adjustment, which is created to keep the law "running on an even keel" by varying, within prescribed limits and consonant with the exercise of a legal discretion, the strict letter of the zoning law, in cases of claims having real merit which can be granted consistently with the spirit and purposes of the general plan. "It has preserved the constitutionality and popularity of the zoning ordinance, and, more than that, it has made the law capable of being enforced." Baker, Legal Aspects of Zoning, p. 106. It may grant relief subject to conditions and thereby obtain results not attainable in any other way. Baker, p. 94. "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." *Bain Peanut Co.* v. *Pinson*, 282 U. S. 499, 501, 51 Sup. Ct. 228, 229. Nowhere is this more applicable than to zoning ordinances; the saving elasticity is mainly afforded through boards of adjustment. Much depends upon the skill, sound judgment and probity of the members. It is essential to their functions that they be invested with liberal discretion. They are accorded the benefit of a presumption that they act fairly, with proper motives and upon valid reasons, and not arbitrarily. *Silvester* v. *Princeton*, 104 N. J. L. 18, 139 Atl. 518; *Buffalo* v. *Hill*, 79 N. Y. App. Div. 402, 79 N. Y. Supp. 449; *Chicago & N. W. Ry. Co.* v. *Railroad and Warehouse Commission*, 280 Fed. 387, 395; Metzenbaum, Law of Zoning, p. 265.

The conditions and considerations affording occasion for the exercise of their functions and discretion are often subject to variation, from time to time, consequent upon changing needs, requirements, uses and other fluctuating or progressing elements. When the

facts and circumstances which actuated an order or a decision are alleged and shown to have so changed as to vitiate or materially affect the reasons which produced and supported it and no vested rights have intervened, it is reasonable and appropriate to the functions of the board that the subject-matter be reexamined in the light of the altered circumstances.

In applying this principle to the case before us, the proceedings in June and July, 1930, are to be regarded as based upon the application of June 11th. We construe the finding as meaning that, as the applicant offered to produce no evidence, at the meeting of June 26th, of a change in relevant facts since the former decision, in December, 1929, no public hearing was accorded. It is clear from the provisions of the enabling Act (Special Acts of 1925, §§ 8 and 9) and from Section XV of the ordinance, that hearing, after public notice, is a prerequisite to a decision on the merits. *Richards* v. *Board of Review of Woonsocket* (R. I.) 129 Atl. 736. The "permission to withdraw" voted at the time appears not to have been considered either by the board or the applicant, as a final determination of the matter. The finding states that "the application . . . again came before the board," on July 15th, a public hearing upon it was then had, and decision was made on July 29th, granting the desired permission, subject to specified conditions and limited as to time. "Prior to [that date] there was in the city of Hartford, and particularly in the vicinity in question, a constantly increasing need for parking space outside of the highway limits, for the public welfare, and on July 29th, 1930, this need was becoming more urgent." Relief of congestion in the streets and the promotion of safety and adequate facilities for transportation are among the declared purposes of

the Hartford zoning regulations and weighty elements to be considered in their administration, including determination as to exceptions and relaxations sought through the board of appeals. It cannot fairly be held on this record that the situation presented to the board in July was so unchanged in any material respect from that obtaining at the time of the previous hearing and decision as to preclude the board, in the exercise of a proper discretion, either from according hearing upon the application or from granting it, especially with the conditions and limitations imposed, notwithstanding the denial of the former application. *Mingle* v. *Board of Adjustment* (N. J.) 142 Atl. 367.

There is no error.

In this opinion the other judges concurred.