WILLIS M. THAYER ET ALS. *vs.* BOARD OF APPEALS OF THE CITY OF HARTFORD.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 21st—decided December 8th, 1931.

*Louis M. Schatz,* with whom was *Joseph B. Griffin,* for the appellant (defendant).

*A. Storrs Campbell,* with whom, on the brief, was *W. Arthur Countryman, Jr.,* for the appellees (plaintiffs).

HINMAN, J. On February 9th, 1926, the city of Hartford adopted a zoning ordinance, under authority of a Special Act the general provisions of which are stated in *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 133, 154 Atl. 343. The purposes of this ordinance as set forth in Sec. I thereof include: "promoting the health, safety, morals, and general welfare of the community; securing safety from fire, panic, and other dangers; . . . preventing the overcrowding of land and avoiding undue concentration of population; . . . facilitating adequate provision of transportation, water, sewerage, schools, parks and other public requirements; . . . conserving the value of buildings and encouraging the most appropriate use of land throughout the city; . . . providing for the public health, comfort and general welfare in living and working conditions; and . . . regulating and restricting the location of trades and industries and the

location of buildings designed for specific uses." These declared purposes of the zoning regulations are "weighty elements to be considered in their administration, including determination as to exceptions and relaxations sought through the board of appeals." *St. Patrick's Church Corporation* v. *Daniels, supra,* p. 141.

The city is divided into seven classes of zones and it is provided that "no building or premises shall be used, and no building shall be erected or altered, except in conformity with the regulations herein prescribed for the zone in which such building or premises is located." Sec. VII, which relates to nonconforming buildings and uses, provides that "any nonconforming use existing at the time of the passage of this ordinance may be continued and any existing building designed, arranged, intended or devoted to a nonconforming use may be reconstructed and structurally altered, and the nonconforming use therein changed subject to the following regulations: (a) The cost of structural alterations made in such building shall in no case exceed forty per cent of the value of such building, nor shall the building be enlarged unless the use therein is changed to a conforming use. . . . (b) No nonconforming use shall be extended at the expense of a conforming use. (c) In a residence zone, no building or premises devoted to a use permitted in a business zone shall be changed into a use excluded from a business zone. . . ."

Sec. XIV provides, further, "Nothing in this ordinance shall prevent the restoration of a building destroyed by fire, explosion, act of God, or act of the public enemy, to the extent of not more than fifty per cent of its assessed value, or prevent the continuance of the use of such building or part thereof or prevent a change of such existing use under the limitations provided in Section VII. But any building destroyed

in the manner aforesaid to an extent exceeding fifty per cent of its assessed value at the time of such destruction may be reconstructed and thereafter used only in such manner as to conform to all the provisions of this ordinance."

It is provided in Sec. XV that "The Board of Appeals may in a specific case after public notice and hearing and subject to appropriate conditions and safeguards determine and vary the application of the regulations herein established, in harmony with their general purposes and intent as follows: . . . (3) Permit the extension of a nonconforming use or building upon the lot occupied by such use or building at the time of the passage of this ordinance. (4) Permit the erection of an additional building upon a lot occupied at the time of the passage of this ordinance by a business or industrial establishment, where carrying out the strict letter of the provisions would result in practical difficulties or unnecessary hardships. . . . (6) Vary any requirement of this ordinance in harmony with its general purpose and intent, so that substantial justice may be done. This authority shall be executed in a manner to secure the public health, safety and welfare solely in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance. . . ."

Since 1922 Jacob Weiner has owned premises at the northwest corner of Blue Hills Avenue and Branford Street, having frontage on Blue Hills Avenue of approximately sixty-three feet and a depth on Branford Street of about one hundred and fifty-seven feet. At the time of his purchase and continuing to the present, there have been on the lot a store building facing Blue Hills Avenue, sixteen feet in width and fifty feet in depth, and in the rear thereof but detached therefrom two separate single family dwelling-houses, many

years old and in poor condition. These premises are within the "B Residence Zone."

In November, 1930, Weiner filed an application with the board of appeals for permission to erect a new store building with a frontage of fifty feet on Blue Hills Avenue and with a depth of fifty feet, agreeing if such permission were granted to demolish the existing store building and dwelling-houses. Some of the members of the board visited the premises, others had intimate knowledge of the history and development of the neighborhood. November 26th, 1930, the board, after notice and hearing, granted the application, conditioned upon the demolition of all of the present structures and the erection of the new structure limited to a single store having a frontage of fifty feet on Blue Hills Avenue and a depth of fifty feet, architecture and construction to be subject to the approval of the board.

From this action Thayer and fifteen other residents and owners of property in the vicinity and within the same residence zone appealed to the Superior Court. On the trial, the court found the facts above stated in substance; also made the following findings which are not questioned on the appeal to this court: At the time of the purchase of these premises by Weiner there was but one house on Branford Street other than those owned by him; there were practically no buildings lying to the west of Blue Hills Avenue. Since then, approximately forty two-family houses have been erected on Branford Street; new streets parallel with or intersecting Blue Hills Avenue have been opened up and have been fully developed, the houses thereon being single or two-family dwelling-houses. The patronage of the store on Weiner's premises comes from the owners and occupants of houses in the neighborhood. The nearest store to the north is approximately four tenths of a mile; the nearest to the south about

one mile. The store now on the premises is under lease from the owner by the Economy Grocery Company for the purposes of a grocery store, and the owner intends to lease the entire new building to the same tenant for the purpose of selling meats as well as groceries. The owner intends to extend and enlarge the present nonconforming use on the premises. The property owners in the neighborhood were almost unanimous against the granting of the application.

. The trial court found, further (Par. 15): "The vote of the defendant Board granting the application contains no finding of practical difficulty or unnecessary hardship on the applicant. (16) There was no evidence of any practical difficulty or unnecessary hardship as a ground for the exercise by the defendant Board of its power to vary the zoning ordinance. (17) The defendant Board based its decision on the grounds that the demolition of the old buildings on the premises and the erection of a new structure would improve the appearance of the property and that it was a hardship on the owner not to be able to get more income out of the property than he is now getting, inasmuch as he had paid a good price for it before the zoning ordinance was adopted." The record confirms the statement in paragraph fifteen. As to the others, the only evidence as to the grounds of the decision of the board is the testimony of one member to the effect that in his opinion the removal of the old buildings and the erection of a new structure would improve the appearance of the property and that it was a hardship on the part of the owner not to be able to obtain more income from the property in view of the price which he paid for it. Evidence of the individual views of one member is not available to show the reasons actuating the board or the grounds of its decision. These can only be shown by the vote of

the board. *State* v. *Blake,* 69 Conn. 64, 75, 36 Atl.
1019. Paragraph seventeen therefore lacks evidential
support. Paragraph sixteen is warranted to the extent
that there was shown no practical difficulty or hard-
ship sufficient to afford adequate ground for the action,
and the request of the present appellant for a further
finding that the proposed changes are in harmony with
the purposes of the ordinance as declared in Sec. I,
cannot be granted, for reasons which will be stated
hereafter.

The Superior Court rendered judgment sustaining
the appeal and vacating the order of the board. The
present appeal questions the soundness of the conclu-
sions upon which the judgment is based.

The record of the proceedings of the board of ap-
peals contains no statement of the specific grounds on
which the application was granted, and the hearing
before the Superior Court supplied no information on
this subject which is of utility in the present inquiry
in testing the validity of the board's action, which, of
itself, affords no justification apart from the general
presumption that the board acted with proper motives
and upon valid reasons. *St. Patrick's Church Cor-
poration* v. *Daniels, supra,* p. 139. The question on
appeal to the Superior Court, therefore, was whether
the facts proven before it afforded reasonable grounds,
within the limits of its powers, for action of the board.
*Root* v. *New Britain Gas Light Co.,* 91 Conn. 134, 135,
99 Atl. 559; *Connecticut Co.* v. *Stamford,* 95 Conn. 26,
31, 110 Atl. 554. The grounds inconclusively indicated
by the expressed opinion of the single member would,
in our judgment, be quite insufficient when balanced
against the other obvious considerations. Even though
the appearance of the particular property in question
would be improved, this is of slight importance com-
pared to the preservation of the essential objects and

purposes of the scheme of the Zoning Act, and the effect of the conditions contemplated thereby as regards the property of others in the neighborhood. The advantages accruing to properties in residential zones from the exclusion of new and limitation of existing business enterprises and buildings devoted thereto are obvious and weighty. The relation thereof to the health and public welfare of the community is generally recognized as founded on numerous legitimate considerations. *Fitzgerald* v. *Merard Holding Co., Inc.,* 110 Conn. 130, 138, 147 Atl. 513; *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 695, 155 Atl. 850. Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship. "Financial considerations alone . . . cannot govern the action of the board. They are bound to take a broader view than the apparent monetary distress of the owner. Otherwise, there would be no occasion for any zoning law." *Norcross* v. *Board of Appeal,* 255 Mass. 177, 185, 150 N. E. 887, 890.

Provisions of the Hartford ordinance (Sec. XV) common in such enactments, are intended and adapted to afford opportunity, through the board of appeals, for amelioration of unnecessary hardships which, owing to special conditions, would result from literal enforcement of the restrictive features of the ordinance. "A board of appeals . . . is created to keep the law 'running on an even keel,' by varying, within prescribed limits and consonant with the exercise of a legal discretion, the strict letter of the zoning law, in cases of claims having real merit which can be granted consistently with the spirit and purposes of the general plan." *St. Patrick's Church Corporation* v. *Daniels,*

113 Conn. 132, 139, 154 Atl. 343, 345; *Lathrop* v. *Norwich,* 111 Conn. 616, 620, 151 Atl. 183; *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 58, 154 Atl. 161; *Greenwich Gas Co.* v. *Tuthill, supra.* Occasions for the exercise of this function most frequently, as here, relate to the restrictions upon continuation and extension of nonconforming buildings and uses, under regulations such as those appearing in Sec. VII of the Hartford ordinance. It is required, however, that variations indulged under these powers, including those designed to relieve difficulties or hardships in special instances, shall be in substantial harmony with the general purposes and intent of the ordinance and without undue impairment thereof. "It is manifest from the tenor of the zoning act as a whole . . . that the power of authorizing variations from the general provisions of the statute is designed to be sparingly exercised. It is only in rare instances and under exceptional circumstances that relaxation of the general restrictions established by the statute ought to be permitted. The power granted is only for the relief of specific instances, peculiar in their nature." *Norcross* v. *Board of Appeal, supra,* p. 185.

The ultimate purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. The continued existence of those which are nonconforming is inconsistent with that object, and it is contemplated that conditions should be reduced to conformity as completely and as speedily as possible with due regard to the special interests of those concerned, and where suppression is not feasible without working substantial injustice, that there shall be accomplished "the greatest possible amelioration of the offending use which justice to that use permits." "The accepted method of accomplishing this result is as follows: The nonconformity is in no case allowed to

increase. It is permitted to continue until some change in the premises is contemplated by the owner, when, in so far as expedient, the authorities take advantage of this fact to compel a lessening or complete suppression of the nonconformity." Williams, Law of City Planning and Zoning, pp. 202, 203; *Lathrop* v. *Norwich, supra,* p. 623.

Intention to pursue this general policy is significantly shown by the provisions of Sec. VII, concerning reconstruction and structural alteration of nonconforming buildings and extension of nonconforming uses, and Sec. XIV, concerning restoration of buildings destroyed. The substitution for an old building of a new structure of thrice the size of the old one and contemplating a corresponding increase in nonconforming use would be so radical a departure from this policy as to be permissible only because of circumstances more compelling than improved physical appearance of the particular premises, or more advantageous financial return to the owner, or both.

There is no error.

In this opinion the other judges concurred.