RAY LEVINE ET AL. *v.* BOARD OF ADJUSTMENT OF THE
CITY OF NEW BRITAIN.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued April 5—decided June 8, 1939.

*Albert B. Walker,* with whom was *Maurice W. Rosenberg,* for the appellants (plaintiffs).

*John F. Downes,* corporation counsel, for the appellee (defendant).

AVERY, J. The facts in this case were agreed upon. On February 11, 1937, the plaintiffs purchased certain premises on Pearl Street in New Britain. From February, 1925, to May, 1937, the property was in a district zoned for industrial uses, among which junk yards are listed, and the surrounding property was generally used for industrial purposes. Before purchasing, the plaintiffs were informed by the building inspector of the city that a junk yard on the premises was allowed under the zoning ordinances of the city. On February 23, 1937, the plaintiffs were granted a permit by the building inspector to erect a fence and on February 27th began the erection of a fence, completing it on March 6th. Before the permit was granted, the plaintiffs had discussed with the inspector the type to be erected and the fence was approved as suitable and satisfactory by the inspector. At a meeting held on the evening of February 23d, the common council of the city of New Britain passed an ordinance appended in the footnote.[1] On March 1st, the building inspec-

---

[1] Sec. 20 (a). No person, firm or corporation shall conduct a junk yard within the corporate limits of the City of New Britain without a license issued by the Building Commission. No junk yard shall be licensed unless it conforms to the following regulations: All junk yards shall be completely enclosed by a solid fence not less than five (5) feet high, properly erected and kept in repair, and no junk shall be piled in any junk yard to a height exceeding the height of the fence surrounding it. No junk of any description shall be placed or stored within one hundred (100) feet of any street line, or within fifty (50) feet of any adjoining property line, or within one hundred fifty (150) feet of any dwelling house. This section shall apply to all junk yards, whether or not existing at the time of the passage of this ordinance, but the requirements concerning distance from

tor notified the plaintiffs that by the terms of the ordinance they were prohibited from using the premises as a junk yard. Thereafter on March 6th, the plaintiffs deposited old metals on the premises and continued to carry on the business of dealing in old metals and other junk. On March 23d the plaintiffs applied to the inspector for a certificate of occupancy to use the yard for the storage of junk; and, on the day following, the inspector refused to grant the certificate, on the ground that the ordinance of February 23d prohibited the use of the property as a junk yard. On May 17th the plaintiffs appealed to the board of adjustment of the city from the refusal of the inspector to grant the certificate of occupancy. On May 19, 1937, the common council amended the zoning ordinances of the city by changing from an industrial zone to a business "B" zone a territory in the city including the plaintiffs' premises. In a business "B" zone a junk yard is not permitted. The parties have stipulated that the plaintiffs would have been entitled to the certificate of occupancy applied for except for the ordinance of February 23d. On July 12, 1937, the board of adjustment dismissed the plaintiffs' appeal from the action of the building inspector in refusing to grant a certificate of occupancy. The plaintiffs then appealed to the Superior Court, and

street lines, property lines, and dwelling houses, shall not apply to existing junk yards. Existing junk yards shall be allowed a period of thirty (30) days within which to secure a license. All licenses issued hereunder shall be valid for one year from the date of issuance. A fee of five dollars ($5.00) shall be paid to the Building Commission at the time of each application for such license, and a fee of three dollars ($3.00) for each renewal thereof. Any violation of this section shall be a misdemeanor, and shall be punishable by a fine of not more than fifty dollars ($50.00) for each offense. Each day that such violation shall continue shall constitute a separate offense.

Adopted February 23d, 1937.

from a judgment in favor of the defendant have appealed to this court.

The charter of the city of New Britain (Special Laws, 1905, No. 411, § 46, as amended by Special Laws, 1913, No. 345, § 3) provides: "The common council shall have power, under the restrictions otherwise provided in this act, to make proper rules regarding the transaction of the business of the council and its meetings, and shall have power to make such orders and ordinances as it shall see fit in relation to the following subjects within the limits of said city, to wit: Concerning the general welfare of said city and its inhabitants and the property therein; concerning nuisances of all kinds in said city and their summary abatement by any person by it appointed therefor. . . ." The ordinance of February 23d was adopted pursuant to this provision. The plaintiffs make no complaint as to the procedure under which it was adopted. Their claim, in substance, is that the ordinance was not a valid exercise of the police power. The common council was vested with very broad powers. A junk yard, while not a nuisance per se, may become such under certain circumstances and in certain locations. "Even though a business is not a nuisance per se, it is within the police power of the State to declare that 'in particular circumstances and in particular localities' a business which is not a nuisance per se 'shall be deemed . . . in fact and in law' a nuisance." *State* v. *Hillman*, 110 Conn. 92, 106, 147 Atl. 294; *Reinman* v. *Little Rock*, 237 U. S. 171, 176, 35 Sup. Ct. 511; *Hadacheck* v. *Sebastian*, 239 U. S. 394, 36 Sup. Ct. 143. A regulation of junk yards by law has been generally held within the proper exercise of the police power. *State* v. *Kievman*, 116 Conn. 458, 465, 165 Atl. 601, 88 A. L. R. 962, and note, 971; *Finkelstein* v. *Sapulpa*, 106 Okl. 297, 298, 234 Pac. 187;

*Cohen* v. *City of Danville*, 217 Ill. App. 619; *Knack* v.
*Velick Scrap Iron & Machinery Co.*, 219 Mich. 573,
189 N. W. 54; see note to *Stroll* v. *State*, 30 A. L. R.
1424, 1427 (95 Tex. Crim. Rep. 611, 255 S. W. 620);
3 McQuillin, Municipal Corporations (2d Ed.) pp. 133,
430. In view of the broad power vested in the com-
mon council under the charter, the provision by which
the council is empowered to make ordinances "con-
cerning nuisances of all kinds in said city" cannot be
reasonably confined to nuisances per se but neces-
sarily implies the power to treat as nuisances those
things which may be nuisances but as to which there
may be an honest difference of opinion in impartial
minds. 3 McQuillin, Municipal Corporations (2d Ed.)
p. 128. Junk yards fall within this classification. Nor
was the power vested in the common council limited
to abatement of such a business as that of the plain-
tiffs as a nuisance, but it included the adoption by the
municipality of reasonable regulations for the conduct
of the business for the common good of the inhabitants
of the city.

The provisions of the ordinance are uniform in their
application except that existing junk yards were
exempt from the requirements concerning distance
from street property lines and dwelling houses that
junk might be stored. The exemption of existing busi-
nesses from a provision of the ordinance in these re-
spects does not render the ordinance invalid as an
unreasonable discrimination. The power to adopt
zoning regulations like the power to regulate nuisances
finds its justification in the police power. *Euclid* v.
*Ambler Realty Co.*, 272 U. S. 365, 387, 47 Sup. Ct. 114;
*Parkersburg Builders Material Co.* v. *Barrack*, 118
W. Va. 608, 191 S. E. 368, 370. It is quite common in
zoning ordinances to permit the continuance of exist-
ing nonconforming uses. "Some such provision, rea-

sonably regarding and protecting uses and conditions existing at the time of the adoption of a zoning ordinance, is fair and is found in many such ordinances." *Lathrop* v. *Norwich*, 111 Conn. 616, 622, 151 Atl. 183; *State* v. *Hillman*, 110 Conn. 92, 95, 147 Atl. 294; *Fitzgerald* v. *Merard Holding Co., Inc.*, 110 Conn. 130, 133, 147 Atl. 513; *Aurora* v. *Burns*, 319 Ill. 84, 95, 149 N. E. 784; *Inspector of Buildings of Watertown* v. *Nelson*, 257 Mass. 346, 153 N. E. 798, 799; 43 C. J. § 370. Boards of appeals may vary within prescribed limits and consonant with the exercise of a legal discretion the strict letter of the zoning law in cases of claims having real merit which can be granted consistently with the spirit and purposes of the general principle. *Thayer* v. *Board of Appeals*, 114 Conn. 15, 22, 157 Atl. 273; *St. Patrick's Church Corporation* v. *Daniels*, 113 Conn. 132, 139, 154 Atl. 343; *Chudnov* v. *Board of Appeals*, 113 Conn. 49, 58, 154 Atl. 161; *Greenwich Gas Co.* v. *Tuthill*, 113 Conn. 684, 695, 155 Atl. 850.

In *Sammarco* v. *Boysa*, 193 Wis. 642, 215 N. W. 446, the Supreme Court of Wisconsin upheld an ordinance of the city of Milwaukee providing that automobiles carrying a volatile, inflammable liquid should not be placed in wooden buildings of a certain character but that the ordinance should not prevent the owner of an existing garage from keeping not more than two automobiles for his own use in a portion of a building. The court said (p. 644): "There is a manifest difference between prohibiting the erection of undesirable buildings, or buildings to be devoted to undesirable purposes, within a given area, and compelling the destruction of buildings already constructed or prohibiting a continuance of the use to which they may presently be devoted. In the one case the owner has made expenditures in the construction of his building or in

fitting up his premises for the use to which they are devoted, while in the other case no such expenditures have been incurred. This circumstance furnishes an unimpeachable basis for classification for the purposes of legislation such as we are construing. That the legitimacy of such classification has received general and widespread recognition with reference to related subjects is apparent upon casual reflection. A familiar example is the establishment of fire limits in cities. Ordinances establishing such limits quite universally provide that the inhibitions against wooden and inflammable buildings shall be prospective only, existing buildings being exempted from the provisions of the ordinance. Regulations relating to the installation of plumbing, electric wiring, etc., also customarily apply only to buildings to be erected in the future. . . . So-called zoning laws and ordinances . . . quite generally contemplate the accomplishment of the purposes of such laws by regulations prospective in character, leaving existing buildings and businesses undisturbed. . . . To assert that the ordinance here under consideration denies the equal protection of the law would not only defeat the purpose of zoning laws in general but it would amount to a declaration that society is powerless to prevent the growth and development of an evil without completely stamping out the evil." See also remarks of *McFarland, J.,* in *Ex parte Bohen,* 115 Cal. 372, 379, 47 Pac. 55, 57.

It does not appear that the plaintiffs ever applied for a license to conduct a junk yard on these premises. It may be that this is because their land, as appears from the deed, was only 89.1 feet in width and 240.5 feet in depth and junk could not have been stored upon such a small property and conform to the requirements of the ordinance. No contention is made that the provisions of the ordinance, requiring the con-

struction of a fence five feet in height and prohibiting the storage of junk within one hundred feet of a street line, fifty feet of adjoining property, and one hundred and fifty feet of a dwelling house, are unreasonable. The obvious purpose of this provision was to require the storage of junk at such distance from adjoining proprietors and the street line, and further to require erection of a fence and limit the height to which the junk could be stored, in order that the business might be carried on without annoyance to adjoining proprietors or the public passing in the street. The effect, of course, was to prohibit the establishment of further junk yards except by those whose property was large enough to conform to the terms of the ordinance. The city might have prohibited the establishment of further junk yards altogether. Instead it prohibited their establishment unless their operations could be carried on so far from the street and adjoining proprietors that the conduct of the business would be innocuous. The plaintiffs have no legal ground of complaint because the dimensions of their land are insufficient to permit them to conform to the requirements. "Every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community." *Windsor* v. *Whitney,* 95 Conn. 357, 369, 111 Atl. 354.

There is no error.

In this opinion the other judges concurred.