[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Thomas M. Daniel and Maria Daniel appeal the decision of defendant Conservation Commission of the City of Norwalk [Commission] granting the application of defendant Cedar West, Inc. [Cedar West] for a modification of Cedar West's permit to conduct regulated activities within certain wetlands areas.
The subject property is located on North Taylor Avenue and Twin Ledge Road, Norwalk, Connecticut, Taxing District 5; Block 64c; Tax Lots 153, 286, 326 and Twin Ledge Road Right of Way (R.O.W.) (Return of Record [ROR] #3 Letter to John Schwartz, Environmental Officer, dated December 13, 1989, with attached Cedar West Application). On December 13, 1989, Cedar West submitted an Application for Permit No. N-438 to the Commission to conduct regulated activities in the construction of a conservation development consisting of fourteen single-family CT Page 1484 homes. (ROR #3). On January 22, 1990, a public hearing was conducted by the Commission on Cedar West's Application No. N-438. (ROR #16 copy of minutes of the January 22, 1990 Conservation Commission meeting; ROR #17 copy of transcript of the January 22, 1990 Conservation Commission meeting). At the hearing Cedar West's representative spoke in support of the application. (ROR #16, #17). Plaintiff Thomas Daniel and several neighbors spoke in opposition. (ROR #16, #17). The matter was continued to February 20, 1990. (ROR #21 copy of minutes of the February 20, 1990 Conservation Commission meeting; ROR #22 copy of the February 20, 1990 Conservation Commission meeting). On March 5, 1990, the application was approved with conditions by a vote of six in favor and one abstention. (ROR #24 copy of minutes of Norwalk Conservation Commission meeting held March 5, 1990).
On April 10, 1990, Cedar West applied to the Commission for modification of its conservation permit issued by the Commission on March 5, 1990. (ROR #36 copy of letter to Norwalk Conservation Commission dated April 10, 1990). The modification was to allow a relocation of the access driveway from North Taylor Avenue. (ROR #36). On May 21, 1990, a public hearing was held on Cedar West's application for a modification. (ROR #45 copy of minutes of Norwalk Conservation Commission meeting held May 21, 1990; ROR #48 copy of transcript of Norwalk Conservation Commission meeting held May 21, 1990). Cedar West's representatives spoke in support of the application and plaintiff Thomas Daniel and a neighbor spoke in opposition. (ROR #45, #48). On June 4, 1990, the modification was granted with conditions by a vote of four in favor and three opposed. (ROR #52 copy of minutes of the Norwalk Conservation Commission held on June 4, 1990; ROR #55 copy of transcript of Norwalk Conservation Commission meeting held on June 4, 1990). It is from the Commission's approval of the permit modification that the instant appeal arises. The Commission has adopted the brief of defendant Cedar West.
At the September 18, 1991 hearing on this appeal, the court ruled form the bench finding aggrievement.
Plaintiffs argue that the Commission relied on Cedar West's incorrect statements regarding ownership of the subject property. Plaintiffs argue that Cedar West has routinely included all four parcels of land (Tax Lots 153, 286, 326 and R.O.W.) for the proposed development without any distinction as to what portion is City land and what portion belongs to the applicant. Plaintiffs allege that Cedar West will never own all four parcels at the same time. Plaintiffs argue that because Cedar West did not have a contract to purchase the city land until after the conservation proceedings were concluded, the Commission lacked jurisdiction over the application. Plaintiffs argue that Cedar CT Page 1485 West lacked standing to make an application regarding land in which it had no legal interest.
Defendants argue that the applicant at all times properly stated its interest in the subject properties. Defendants further argue that Cedar West's contract to purchase the R.O.W. from the City was entered into at the moment approval was given by the Norwalk Common Council for the land swap and therefore Cedar West has standing.
No pertinent case law was found regarding the issue of standing to pursue an inland wetland application, however, there is case law pertaining to zoning ordinances which is instructive.
"Where zoning ordinances have not specifically required owners to apply or to authorize the application, [the Connecticut Supreme Court] has sustained the issuance of permits to persons who were not owners but who did have substantial interests in the subject property." Richards v. Planning and Zoning Commission, 170 Conn. 318, 321-22, 365 A.2d 1130 (1976). The Norwalk Inland Wetlands and Watercourse Regulations provide in Section 60A-5A the following: "Any person wishing to carry out a regulated activity shall submit an application to the agency." Section 60A-5E(2) further provides that: "All applications shall include the following information. . . (2) The owner's name (if applicant is not the owner of the property), home and business address, telephone numbers, and written consent to the proposed activity set forth in the application." The Norwalk Inland Wetlands and Watercourse Regulations do not require an applicant to be the owner of the property. The City of Norwalk, which holds title to the right of way, is not contesting Cedar West's right to apply for the permit or modification. The issue, therefore, is whether Cedar West possesses a substantial interest in the property to have standing to apply for the modification. To determine whether a nonowner applicant has a substantial interest in the property, the Connecticut Supreme Court set out the following factors:
 Whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property and the extent of the interest of other persons in the same property, are all relevant considerations in making that determination.
Richards v. Planning and Zoning Commission, supra, 325. Cedar West owns three of the four parcels in question and there is no dispute that Cedar West has standing regarding Lots 153, 286 and 326. the dispute concerns only the right-of-way. CT Page 1486
The record reveals that Cedar West's application for a modification of its conservation permit requests the relocation of the roadway that existed on the right of way parcel. (See ROR #48 at 1 and ROR drawings Nos. 56, 57, 58, 59 and 60). There is ample evidence in the record regarding the City's ownership of the R.O.W. and the pendency of a land swap. Reference to the land swap agreement appears in the transcript of the January 22, 1990 meeting. "The arrangement that we have made with the City Council is to swap an area equal in size for that area with the City of Norwalk more directly adjacent to Oak Hills Park." (ROR #17 at 3) Also at the February 20, 1990 public hearing it was stated by the applicant's attorney: "This is the City owned right of way. . . . The swap aspect is that the City deeds over to the developer this area. The developer then deeds back to the City the area marked right there. It is an equivalent square foot swap. . . ." (ROR #22 at 2) Although the applicant Cedar West is not in control of the right-of-way property, the record reflects an agreement between the City and Cedar West to swap the right-of-way for land of equal size and value. This authorization creates a reasonable expectancy for Cedar West to have a future right to possession of the right-of-way.
Based on the above analysis, Cedar West has sufficient interest in the right-of-way to have standing to apply for a modification of its conservation permit.
Plaintiffs next argue that their due process rights were violated in that, additional evidence concerning bond estimates was supplied by Cedar West's experts and considered by the Commission after the close of the public hearing. Plaintiffs contend that they were not given an opportunity to be heard.
General Statutes Section 22a-42a provides that "inland wetlands agency may hold a public hearing. . . ." Norwalk's Inland Wetlands and Watercourse Regulations Section 609A-SI(1) provides:
 (1) If the agency finds, on the basis of the evidence before it, that a regulated activity is involved which may have significant impact or major effect on the inland wetland or watercourses, the agency shall docket such proposal for further investigation and public hearing.
The record reveals that on May 21, 1990, a public hearing was held on Cedar West's application to modify its existing permit (ROR #45, #48). "Although proceedings before administrative agencies. . . are informal and are conducted without regard to the strict rules of evidence, the hearings must be conducted so CT Page 1487 as not to violate the fundamental rules of natural justice." Connecticut Fund for the Environment. Inc. v. Stamford, 192 Conn. 247
249, 470 A.2d 1214 (1984).
 Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence.
Id. The record reveals that the public hearing was closed at 10:25 p.m. on May 21, 1990. (ROR #45 at 6, #48 at 24). The record further reveals that on June 4, 1990, which is after the close of the public hearing, Cedar West's experts submitted information concerning the amount of the performance bond to be posted by the applicants per the conditions set by the Commission. (ROR #53 Letter to John Schwartz Conservation Commission from Leonard C. D'Andrea, PE, dated June 4, 1990; #54 Letter from Don Strait to Conservation Commission dated June 4, 1990). Illegally received evidence can be harmless error where the agency's action is adequately supported by reasons not based on the allegedly improper evidence. Commission, 165 Conn. 533,545, 338 A.2d 490 (1973). "Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly (citations omitted) the burden on such a claim rests upon the person asserting it." Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,537, 525 A.2d 940 (1987). Because the issue of the bond is so far removed from the Commission's decision to the applicant's modification of its permit, the plaintiffs have failed to prove that they were harmed by the Commission's receipt of evidence regarding the bond estimates after the hearing so as to constitute a denial of due process.
Plaintiffs argue that the Commission erred in concluding that it was required to accept as controlling the testimony of Cedar West's expert that a wetland could be recreated by the transfer of wetlands soil. Plaintiffs argue that Commissioner St. John's remarks regarding the legal effect of Cedar West's expert testimony were prejudicial because they disregarded the existence of contrary expert evidence concerning the re-creation of wetlands aspect of the application. Plaintiffs argue in their February 8, 1991 brief the following:
 Mr. St. John reflected on the legal effect of the testimony of Dr. Barske, and reasoned that the Commission had before it only his expert testimony `that this could work.' Ex. 52, p. 1. His reference to `if the case goes to court' clearly anticipates CT Page 1488 the application of the rules of law from Feinson v. Conservation Commission, 180 Conn. 421 (1980), and Tanner v. Conservation Commission, 15 Conn. App. 336
(1988) (involving the Norwalk Conservation Commission), and draws the conclusion that the Commission was somehow mandated to follow the recommendation of the expert, as a matter of law.
(Plaintiffs' Brief dated February 8, 1991 at 12 and 13). Plaintiffs argue that unlike Feinson and Tanner, the instant case involves the question of whether Cedar West is permitted to create replacement wetlands and "that there is no need to have `testimony that it will not work' in order for the Commission to conclude that the plan was not satisfactory. . . ." (Plaintiffs' Brief at 14) Plaintiffs conclude that "it was error for a Commission member to limit his discretion by such a rule, and to recommend such a rule the other members." (Plaintiffs' Brief at 14).
"Evidence of the individual views of one member is not available to show the reasons actuating the [Commission] or the grounds of its decision. These can only be shown by the vote of the [Commission]." Thayer v. Board of Appeals, 114 Conn. 15,20-21, 157 A. 273 (1931). There is nothing in the record to connect Mr. St. John's remarks with the vote of the Commission. The plaintiffs' allegations are mere speculations as to what the Commission and Mr. St. John concluded and are without merit.
Plaintiffs' argument that Mr. St. John's remarks were prejudicial because they disregarded contrary evidence is also without merit. The record reveals that there was no expert testimony before the Commission which contradicted Cedar West's expert on the re-creation of wetlands issue. Mr. St. John asked Christie Love, the Commission's staff expert, "[a]re you saying it can't be done or you haven't seen it." Christie Love replied, "I haven't seen it." Christie Love's response is not contradictory rather it is one of lack of knowledge. The plaintiff's allegations and arguments fail to show that the Commission acted improperly or illegally.
Cedar West has standing to apply for the modification of its conservation permit and the Commission's actions did not constitute a denial of due process. The plaintiffs have failed to satisfy their burden that the Commission acted illegally or arbitrarily in granting the modification of Cedar West's permit. Accordingly, the plaintiffs' appeal is dismissed.
DEAN, JUDGE