MARY A. ROGERS COLE ET AL. *vs.* IRVING M. AUSTIN.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and SIMPSON, Js.

Each of the parties in the present case claimed ownership in fee of a strip of land, twenty-five feet in width, lying between their respective properties, the plaintiffs asserting that the defendant's only interest in the strip was a right of way three feet wide over the westerly side thereof and thence continuing along the plain-

Cole *v.* Austin.

tiff's westerly boundary line to the shore of Long Island Sound, while the defendant contended that the plaintiffs were entitled to no more than an easement of passage. *Held:*

1. That the conclusions of the trial court, that the record title to the disputed area was in the defendant, that the plaintiffs had not obtained title to the fee therein by adverse possession and had only an easement of passage over it, were supported by the subordinate facts, and they, in turn, by the evidence.

2. That, in view of these considerations, the plaintiffs had no right to build a stone wall and to plant trees and shrubbery within the limits of the strip in question and were properly ordered by the trial court to remove them under an appropriate prayer for relief in the defendant's cross-complaint.

3. That the trial court did not err in refusing to order the defendant to remove a causeway extending from an island, owned by him and situated about three hundred feet off-shore, to the plaintiffs' property on the mainland, since it appeared that the causeway and any possible extensions or enlargements of it had been rendered useless to the defendant by reason of the erection by the plaintiffs of a stone abutment under authority of an Act of the General Assembly, and since the facts found did not disclose any infringement of the rights of the plaintiffs, or of the unorganized public, in the lands below high-water mark.

4. That a rope cable stretched between the defendant's island and his property on the mainland, and used for the purpose of pulling and guiding his ferry-boat in such a way that, except when passing through a pulley device on the boat, it fell to and lay upon the bed of the water, did not constitute such an obstruction to navigation by others as to render unreasonable the trial court's conclusion that the plaintiffs were not entitled to relief by way of injunction.

5. That even if the rope were found to be a material obstruction to navigation, the plaintiffs had not established the special or peculiar and substantial injury, distinct from that common to the general public, which is an indispensable requisite to the granting of an injunction against a public nuisance in navigable waters at the suit of a private individual.

6. That a temporary injunction against the erection by the defendant or his agents of any "rope, walk, leadway or causeway," was not violated by his contractors in stretching a mooring rope from their pile-driver to the mainland, since the only rope contemplated by the allegations of the complaint, upon which the terms of the injunction were necessarily based, was obviously the one used in the operation of the ferry-boat.

Argued November 1st, 1927—decided January 27th, 1928.

ACTION to quiet and settle title to a certain tract of land in the town of Greenwich, and for an injunction restraining the defendant from erecting and maintaining certain structures and objects and doing certain acts, brought to the Superior Court in Fairfield County and tried to the court, *Banks, J.;* judgment rendered for the defendant in part and for the plaintiffs in part, and appeal by the plaintiffs. *No error.*

*Thomas J. Ryle,* with whom, on the brief, were *C. Milton Fessenden, Matthew H. Kenealy* and *Daniel E. Ryan,* for the appellants (plaintiffs).

*Harold L. Knapp,* with whom, on the brief, was *Ralph E. Brush,* for the appellee (defendant).

HINMAN, J.  The issues raised by the first count of the complaint and of the cross-complaint relate to the ownership of the fee of, and the rights of plaintiffs and defendant, respectively, in or over a strip of land, twenty-five feet in width, lying between lands which are, admittedly, owned by the plaintiffs and by the defendant.  The plaintiffs claim to own the fee of this strip, subject, at most, only to an easement in the defendant and others to use a right of way three feet wide over the westerly side thereof and thence continuing along plaintiffs' westerly boundary line to the shore of Long Island Sound.  The defendant claims to be the owner in fee of the entire strip in question, subject to an easement of passage in the plaintiffs.

The crucial point, determinative of these opposing contentions, is the location of the southerly terminus of the twenty-five foot strip, referred to in some deeds as a "driftway."  It is undisputed that a private road or way, twenty-five feet in width, extends from a public highway known as Old Byram Road, between land

formerly of Gaertner estate and later of one Hunt-
zinger, on the west, and a small plot of ground, known
as the "dock property," also formerly of Gaertner
estate and now owned in part by the defendant and in
part by one Rowe, on the east, as far as the southerly
boundary of the Huntzinger and dock properties. The
plaintiffs also concede that this driftway extends, fur-
ther, southerly from the southwesterly corner of the
"dock property" diagonally to a point twelve feet
southerly from the southeasterly corner of the Hunt-
zinger property and thence northerly to that corner.
The defendant's contention is that the driftway ex-
tends 81.1 feet southerly from the southwesterly corner
of the "dock property" and about eighty-five feet
southerly from the southeasterly corner of the Hunt-
zinger property, and connects there with an admitted
way ten feet wide running along the easterly boundary
line of defendant's property, and parallel with and ad-
joining the above-mentioned three-foot right of way,
southerly to the shore.

The trial court found the facts and the resulting con-
clusion in substantial accordance with the defendant's
claims in this regard. The plaintiffs seek to undermine
this conclusion by corrections of the finding as to
salient subordinate facts.

The finding that the length of the ten-foot right of
way, extending northerly from the shore of the Sound,
is one hundred and eighteen feet, on its easterly line,
along the land of the plaintiffs, and its westerly line
one hundred and twenty-two feet on other land of de-
fendant, is not attacked, nor is the further finding
that the length of the three-foot right of way, over
plaintiffs' land, is about one hundred and twenty feet,
running from the southerly end of the disputed por-
tion of the twenty-five-foot right of way to the Sound.
The claims of the plaintiffs as to the location and

length of the ten-foot and three-foot rights of way, as delineated upon their map, Exhibit L, are in substantial accordance with the claims of the defendant as shown by his map, Exhibit 21, and with the court's finding. The terminus of the twenty-five-foot driftway, as claimed by the plaintiffs, is separated by more than sixty feet from the northerly end of the ten-foot right of way, as above mentioned, and with no connection between them except over land of the plaintiffs or the defendant, not subject to easement of passage, except, possibly, an extension of the three-foot right of way. Such a result would appear to be illogical and inconsistent with the obvious purposes of the rights of way, i.e. access between the highway and premises abutting on the rights of way and the shore, while the driftway as claimed by the defendant connects with the other rights of way in a manner calculated to serve their purposes.

The principal dependence of the plaintiffs, in support of their claim to record title to the fee in the disputed strip, is upon a construction, favorable thereto, of the descriptions in the deeds by which their predecessors and those of the defendant obtained title to their respective lands. The trial court, adopting the construction contended for by the defendant, found that the westerly boundary line of plaintiffs' property and the easterly line of defendant's land is the easterly line of the driftway, from the dock property southerly to the northerly end of the ten-foot right of way. The plaintiffs seek corrections of the finding which would, instead, establish the westerly line of the disputed strip as the true boundary line between the lands of the contending parties.

The title of all of the property concerned in this controversy relates back to one Thomas Lyon who, prior to 1890, was the owner of all of it. In that year he con-

veyed to Mary Schmenger (subsequently Lyon) the tracts hereinbefore mentioned as the Huntzinger property and designated in this deed as lot No. 1 and the "dock property," also the driftway "in front of and adjoining Plot No. 1, subject to a right of way of the public over the same." A rough sketch of the property conveyed, which appears on the deed, indicates the width of the driftway as twenty-five feet. The sketch purports to cover only the land to which the deed relates, hence the fact that it does not delineate an extension of the driftway southerly over other land of the grantor is without the significance claimed by the plaintiffs, while the reservation of rights of passage by the public would be idle and useless unless a like use further southerly, across grantor's land, existed or was in contemplation. The length of the southerly line of the "dock property" is not stated in this deed, but it was, obviously, limited to the distance between the easterly line of the driftway and the Sound which, as appears from other deeds and testimony, could not have exceeded twenty-nine feet.

On December 12th, 1894, Thomas M. Lyon deeded to Charles H. Lyon a tract of land bounded (making conceded corrections in magnetic courses) east and south on Long Island Sound, west "by land of grantor and a driftway one hundred and ninety feet more or less" and north "by land of Mary Lyon twenty-eight feet"; the latter boundary being, unmistakably, the southerly boundary of the "dock property" above-mentioned. If, as the plaintiffs contend, this deed conveyed title to land extending to the westerly boundary line of the driftway, instead of the easterly, as defendant claims, the length of the northerly boundary would have been, obviously, fifty-three feet instead of the twenty-eight feet specified. The defendant claims that, since the length of the easterly line of the entire

driftway, from its southerly terminus, as claimed by him, northerly to the highway, is one hundred and ninety feet, that dimension, as mentioned in the deed, is descriptive of the driftway instead of the length of the westerly boundary of the land conveyed. Be that as it may, the westerly boundary of the tract conveyed, both as claimed by the plaintiffs and by the defendant, measures somewhat more than one hundred and ninety feet, and that dimension "more or less" is as applicable to one as the other.

The deed contains the further provision: "It being understood and agreed that the driftway between the premises herein conveyed and adjoining premises owned by grantor shall be extended from its present point of termination on the northerly (easterly) side diagonally to a point twelve feet southerly from point of termination on southerly (westerly) side, the northerly (easterly) line of said driftway is not to be extended. Together with a right of way over the driftway leading from the old Byram Road to said premises." Since the grantor then owned no land north of the southerly line of the Huntzinger and dock properties, this reference to "the driftway between premises herein conveyed and adjoining premises owned by grantor" must have related to a portion of such driftway extending southerly beyond that line.

On the same date, December 12th, 1894, Charles H. Lyon, the grantee in the deed last mentioned, conveyed to Annie Gaertner (who then owned Shore Island) a foot-path right of way across the premises to which he had just taken title, to the water, the location of the same to be determined later. This deed significantly describes these premises as bounded south (correctly west) "by a driftway and land of Thomas M. Lyon" and west (correctly north) by land of Mary Lyon. This description therefore also indicates that the drift-

Cole *v.* Austin.

way extended southerly beyond the land of Mary Lyon, else no part of the westerly boundary would have been on the driftway. A subsequent agreement, August 2d, 1898, between the parties to this deed, definitely established this as a three-foot right of way extending "from the southerly end of an existing right of way from the Old Byram Road" (obviously the driftway) "in a southeasterly direction and adjoining land of Thomas M. Lyon to the shore."

Also on August 2d, 1898, Charles H. Lyon deeded the premises to Annie B. Rogers, the predecessor in title of the plaintiffs, again describing the tract as bounded south (correctly west) "by land of Thomas M. Lyon and a driftway one hundred and ninety feet more or less" and west (correctly north) "by land of Mary Lyon twenty-eight feet, together with a right of way from the northerly side of the premises along the existing driftway to the Old Byram Road." The conveyance was also made subject to the above-mentioned right of way in favor of Annie Gaertner. The first indication in evidence of any claim that more land was included in these conveyances was a map, marked Exhibit O-1, purporting to delineate the property of Mrs. Rogers, which was filed December 3d, 1902. This gives the length of the northerly boundary line as 54.5 feet, instead of the twenty-eight feet specified in the deeds, but neither in the conveyances nor in the other evidence is there found satisfactory explanation or justification for the dimension indicated by this map. The only explanatory hypothesis advanced by plaintiffs is that the reference to driftway in the westerly boundary in the deeds from Thomas M. to Charles H. Lyon and the latter to Mrs. Rogers relates only to a triangular area bounded by a diagonal line from the southwesterly corner of the dock property to a point twelve feet south of the southeasterly corner of the Huntzinger property

and thence, by a straight line, northerly to that corner, being the extension mentioned in the 1894 deed, as construed by the plaintiffs. This argument is not convincing in view of the other evidence, by deed and as to usage, that the driftway extended much farther south. Also, had this been the situation, these deeds would, it appears, have bounded the property northerly instead of westerly in part on the driftway, and the description, in the deed to Mrs. Gaertner, in 1904, of the easterly boundary of the land then conveyed to her would, logically, have been "northeast then east" instead of "northeast, then east, then northeast" as hereinafter commented upon. Moreover, the northerly boundary of plaintiff's land is delineated on Exhibit O-1 as a straight line 54.5 feet in length, instead of straight twenty-eight feet and diagonal the remaining distance as it must to accord with plaintiffs' suggested explanation. Also the plaintiffs' map Exhibit L, made in 1925, showing the boundaries claimed by them, suggests no diagonal line in the northern boundary, but shows a straight line along the southerly side of the dock property and extended to the southeasterly corner of the Huntzinger tract, and it was upon this line that the plaintiffs, in 1920, built a wall across half of the twenty-five-foot way. The map, Exhibit O-1, also shows the claimed westerly boundary of plaintiffs' land to be a straight line throughout its entire length and neither this map nor Exhibit L shows any diagonal deflection at the northerly end of this westerly line, as is now suggested by the plaintiffs in attempted reconciliation of the conflict between the length of their north line as stated in the deeds and their present claims.

The record evidence of defendant's title to the tract adjoining plaintiffs' land on the west, and claimed by the defendant to include the fee of the disputed strip,

commences with a deed from the executor and trustee under the will of Thomas M. Lyon who, as before noted, was also the original owner and grantor of both the Mary Lyon tracts and the plaintiff's land. This deed, dated September 24th, 1902, is to Annie M. Gaertner and describes the land conveyed as being bounded "northeast, then east, then northeast, by land of Annie B. Rogers." If the westerly line of Mrs. Rogers' land had been a straight line from the southeast corner of the Huntzinger land to the shore, there would have been no occasion to insert the description "then east" which, consideration of the true compass points as shown by the maps indicates, referred to the diagonal line extending the twenty-five-foot driftway, created in the 1894 deed from Thomas M. Lyon to Charles H. Lyon; and if this diagonal deflection had been at the northerly end of the plaintiffs' westerly line, as is now one of their claims, the description would have read, instead, "northeast, then east" by land of Mrs. Rogers.

The northwest boundary is given as "by land of Mary A. Lyon and by driftway," obviously referring to the Huntzinger tract, so-called, and the portion of the driftway lying between that tract and the "dock property." The description then continues: "A portion of the said land" (the tract conveyed) "being used as a driftway for access to said land of Annie B. Rogers, said driftway consisting of a piece of land twenty-five feet in width extending southeasterly from the north corner of said tract along the northwest (correctly northeast) boundary of said land to said land of Annie B. Rogers, and being a continuation of said driftway above mentioned" (that between the Huntzinger and dock properties) "and the southwest line of said driftway being a line of fence extending southeasterly from the north line of said premises, in front of the house on

the premises hereby conveyed, toward Long Island Sound." The southerly termination of the southwesterly line of the driftway, as claimed by defendant, is only about ten feet southerly of this house.

On May 24th, 1911, the executor of the estate of Annie Gaertner conveyed to her heirs, along with the "dock property," all her interest in the twenty-five-foot driftway, which is minutely described by courses and distances, of the location and length now claimed by the defendant, and her interest in the three-foot right of way; also "a private road or driftway ten feet wide" described, in detail, as running along the Rogers' land and three-foot right of way to a point and monument 16.05 feet northerly of the southerly end of the westerly line of the twenty-five-foot driftway "as claimed by the Gaertner heirs" and about opposite the southerly end of the easterly line of the driftway. It was the apparent and logical purpose of the diagonal extension of the twenty-five-foot way, made in the 1894 deed from Thomas M. Lyon to Charles Lyon, and the overlapping upon the west line thereof of the ten-foot way provided for in the deed now under consideration, to permit the passage of vehicles as well as persons through the diagonal intersection, from one right of way into the other, and so provide for traffic between the highway and the lands along both ways and the shore at the termination of the ten-foot way. The record discloses much evidence of user in harmony with this apparent purpose, by the several parties having occasion to so use it. If the plaintiffs' contention as to the southerly termination of the driftway were correct, the only available right of way between such terminus and the ten-foot way would be, at most, the three-foot right of way (which is limited to foot passage, and the transportation of merchandise is expressly prohibited in the deed creating it), and this only if it were

held to extend northerly much farther than indicated by plaintiffs' map Exhibit L, to the southerly termination of the driftway as claimed by the plaintiffs.

January 12th, 1912, Mrs. Gaertner's executor conveyed to Patrick and Barbara McArdle a tract of land bounded easterly from the Sound to the Huntzinger property, upon the westerly side of the ten-foot private road one hundred and eighteen feet and upon the westerly line of the twenty-five-foot private road seventy-three feet, together with the right to use, with others, these private roads. On March 13th, 1920, the heirs of Mrs. Gaertner gave to Franklin G. Carrie a deed purporting to convey to him, among other properties and rights, the fee to the twenty-five-foot way and the ten-foot way, which had not been included in the deed to the McArdles, and which these heirs had acquired by *mesne* conveyances; also an easement over the three-foot way.

Thereafter, at various times, the defendant, Austin, became the grantee in deeds conveying to him the McArdle property, subject to a life interest of Mrs. McArdle, Shore Island and the rights appurtenant thereto, except a small portion reserved, the fee to the ten-foot private road and to that part of the twenty-five-foot road abutting on the McArdle property (being the disputed tract) and which, as above stated, was not included in the deed to the McArdles; also an easement in the three-foot right of way. The descriptions in these and intermediate conveyances and in deeds of other related properties, are consistent with those in the earlier deeds above mentioned and with the map Exhibit 21, which was made and filed in 1911, and upon which, the trial court finds, the location and boundaries of the several rights of way are correctly shown.

After an exhaustive review of the documentary and oral evidence pertaining to the subject, and giving due

weight to the consideration that, at least since 1911 when plaintiffs filed a caveat to that effect, the title has been openly disputed, we are satisfied that no correction of the finding can properly be made which would affect, adversely, the trial court's conclusion that the record title of the disputed area is in the defendant, and that no other conclusion could reasonably have been reached. The further conclusions, that the plaintiffs have not obtained title to the fee therein by adverse possession, and have only an easement of passage over it, are supported by the subordinate facts found. and they, in turn, by evidence.

The first count of defendant's cross-complaint further alleged that the plaintiffs, by the construction of a fence and planting of trees, grass and shrubbery, have appropriated to their own use the easterly half of the disputed portion of the private roadway, and claimed judgment that these obstructions be removed. The trial court found that, in 1920, the plaintiffs built a stone wall at the north end of the disputed area (which wall, the evidence shows, extends across one half of the twenty-five-foot width) and have further obstructed the full use of the twenty-five-foot roadway by planting shrubbery and trees thereon, and, in the judgment, ordered the plaintiffs to remove these obstructions. Since, so far as appears, any claimed right in the plaintiffs to maintain these obstructions depends upon their alleged ownership of the disputed area free from easement, in the defendant, of passage over it to its full width, the conclusion and judgment on this point necessarily follow from the fact that the fee in the disputed area is held to be in the defendant, and not the plaintiffs, and are therefore correct.

The defendant owns the greater portion of Shore Island, situated in Long Island Sound, about three hundred feet off-shore from the premises of the plaintiffs,

and conducts thereon a shore resort. There is a causeway or ford, leading from Shore Island to plaintiffs' property on the mainland, which originally consisted of stones laid in the mud and furnished a means of access to the island at low tide. Defendant's immediate predecessor in title, who acquired it in 1879, enlarged the causeway to some extent, and the defendant, shortly after purchasing, in 1924, repaired and further enlarged it, somewhat increasing its width, length and height. This enlargement permitted the use of the causeway for a longer period before and after dead low tide. During the winter of 1925-1926, however, the plaintiffs, under grant by the General Assembly, built a stone abutment extending to low-water mark which has made use of the causeway by defendant impracticable except at extremely low tide.

There is a pier extending shoreward from the island to low-water mark. The defendant maintains a float in front of his property on the mainland and a similar one at the end of the pier. During the summer season he operates a boat, about thirty feet long, for ferry purposes, between these floats. A rope cable is stretched between the two floats and passes through a pulley device on the boat, which is propelled by a man standing in the bow and pulling the rope, which, at the same time, guides the direction of the boat. The cable falls to the bed of the water after the boat has picked it up and dropped it. The waters of Byram Cove, where the cable is so placed and used, are navigable at certain stages of the tide by vessels of light draft, but are not used extensively.

The plaintiffs, in the second count of their complaint, alleged that the causeway, and extensions thereof which, it was stated, the defendant threatened to make, and the rope above mentioned, impeded their right to wharf out and to reach the channel, and deprived them

of the full use and enjoyment of their riparian rights, and claimed, *inter alia*, an injunction to compel the defendant to remove the rope and the causeway already built, and to restrain him from continuing to erect the causeway and from trespassing on their premises.

The defendant, in the second count of his cross-complaint, alleged an easement by adverse user to pass over the causeway and the land, between high- and low-water marks, in front of plaintiffs' premises, southerly to the ten-foot right of way, and that the stone abutment which plaintiffs had constructed prevented him from using the easement, and prayed judgment that the plaintiffs remove the abutment. The issues on this count of the cross-complaint were found adversely to the defendant and he has not appealed. The effect of the presence of the abutment, the legality of which is thereby established, in rendering the causeway useless to the defendant would seem also to dispose of any ground for apprehension by the plaintiffs that he will or can continue to use it or will further enlarge or extend it. The facts found, as above summarized, do not suggest any occasion, because of infringement of any rights of the plaintiffs, or of the unorganized public, in the lands below high-water mark, for compelling the defendant to remove the existing causeway, wholly or in part, and facts sought to be inserted to that end are not admitted or undisputed. The trial court was not in error in declining to so order.

The trial court found that the use of the rope in the operation of the ferry, as above described, did not interfere with navigation or invade any of the riparian or property rights of the plaintiffs or the general public. The plaintiffs seek to have the finding corrected to the effect that the existence of the rope impairs access from the plaintiffs' land to the open waters of the Sound, thereby depriving plaintiffs of their full riparian rights

and depreciating the value of their land. The existence
of any such effect was clearly not an admitted fact,
and the testimony as to the amount of depreciation re-
sulting therefrom was so manifestly exaggerated that
we think the court was amply justified in disregarding
it. The plaintiffs do not present for insertion any sub-
ordinate facts pertaining to the existence and manner
of use of the rope, in addition to those already in the
finding, which would materially affect the ultimate fact
found, viz., that the rope, as so located and used in
propelling and guiding the boat, does not obstruct
navigation. What constitutes a nuisance-creating ob-
struction of navigation depends upon the circum-
stances in the particular case, and is a question of fact.
So long as a vessel, however guided or propelled, does
not actually prevent or render hazardous navigation by
others, it cannot be considered an obstruction to navi-
gation in the ordinary sense of the term. *The Van-
couver*, 28 Fed. Cas. No. 16,838; *Potter* v. *Pettee*, 2
R. I. 483, 487. The cases in which cable ferries have
been involved indicate that, while of course a cable
permanently stretched at or near the surface of navi-
gable waters is an obstruction, when the boat takes the
cable off the bottom only a few feet in front and rear
of it as it passes along, or when, on the approach of
another vessel, the rope is lowered so as to give ample
space for the boat to pass, no material obstruction to
navigation results. *Albina Ferry Co.* v. *The Imperial*,
38 Fed. 614, 3 L.R.A. 234; *Ladd* v. *Foster*, 31 Fed. 827;
*Potter* v. *Pettee*, 2 R. I. 483, 487; *The Swan*, 19 Fed.
455. We cannot say, upon the evidence in the present
case, that the court could not reasonably have found,
as it did, that the rope did not constitute such an ob-
struction of navigation as to be a proper subject for
injunctive relief.

But even were we at liberty to correct the finding in

this respect, the plaintiffs, as we have above noted, have not established the special or peculiar injury, distinct from that common to the public generally, and the substantial damage, which are indispensable requisites to the obtaining, by private individuals, of an injunction against a public nuisance in navigable waters. *Balf Co.* v. *Hartford Electric Light Co.*, 106 Conn. 315, 327, 138 Atl. 122, and cases cited; 27 R.C.L. p. 1346, §§ 257, 258. The participation of the Attorney General as a party plaintiff was in behalf of the unorganized public for the protection of their riparian rights in land below high-water mark. The right of the State, as such, to bring proceedings for the abatement of an obstruction to navigation is not involved in this action.

On May 8th, 1926, the Deputy Judge of the City Court of Stamford issued a temporary injunction, based upon the complaint in this action, enjoining the defendant from, among other specified acts, "erecting or causing to be erected any . . . rope, walk, leadway or causeway." Shortly after service of this injunction a pile driver and barge were moored, by the Bridgeport Dredge and Dock Company, opposite the pier on Shore Island, a rope was stretched from the pile driver to the mainland for mooring purposes, and thereafter six piles were driven in continuation of the pier. This work was done under and in partial performance of a contract with the defendant dated April 30th, 1926. The plaintiffs, on May 25th, 1926, filed a motion that the defendant be adjudged in contempt of court, because of the acts above mentioned. The trial court, as did *Judge Baldwin* in denying the motion, found that the rope referred to in the injunction was the cable rope used for the ferry, which was the only rope mentioned in the complaint, and did not cover the mooring-rope for the pile driver, and that the "walk, leadway, or causeway" was the causeway, formerly alluded to as

the "stepping stones," and not the pier in the extension of which the piles were driven. We concur in this construction, which sustains the conclusion that the defendant did not thereby violate the terms of the temporary injunction.

There is no error.

In this opinion the other judges concurred.