THE FIRST NATIONAL BANK AND TRUST COMPANY
ET AL. *v.* THE ZONING BOARD OF APPEALS OF
GREENWICH ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 7, 1939—decided January 3, 1940.

*William L. Tierney,* for the appellants (plaintiffs).

*H. Allen Barton,* for the appellee (named defendant).

*John D. Walker,* for the appellees (defendants Jacques B. Schlosser et als.).

HINMAN, J. The plaintiff bank, which the trial court justifiably concluded is the only plaintiff having any present interest in the appeal and is hereinafter referred to as the plaintiff, is the owner of Shore Island located in Long Island Sound at Byram in Greenwich. On this island there are five dwelling houses, one of which has in the past been used as a boarding house, one hundred bath houses, six cabanas and several pump houses. It is connected with the mainland by a hand-rope ferry which constitutes the only means of connection except stepping stones at low tide. The plaintiff also owns on the mainland a lot of land which has been used in the summer time for a number of years as a parking place for automobiles of people going to the island, who then walk along a right of way between two of the residences on the shore front to the shore end of the ferry and stepping stones. On February 21, 1926, zoning regulations became effective in Greenwich under which both the island and the mainland lot were included in a residential zone. Thereafter, by deed dated June 7, 1926, the mainland lot was acquired by Irving M. Austin, the then owner of Shore Island. This lot, prior to its acquisition by Austin, had not been used for parking purposes, but, beginning in the summer of 1927, was used for parking during the summer time with the exception of one or two summers. It is approached from Ritch Avenue by Byram Shore Road which leads into Byram Dock Street, a very narrow street grading steeply toward the shore and ending near the lot. During the summer of 1938 all parking was prohibited for a distance of one-half mile in all directions, along Byram Shore Road and Byram Dock

Street and part of Ritch Avenue, so that the plaintiff's mainland lot is now the only available parking space for Shore Island within a distance of one-half mile.

The residential properties in the vicinity are high in grade and value, those of the residents who, on their motion, were admitted as parties defendant alone having a total assessed valuation of $1,600,560, and are used all the year. Shore Island was used only for residential purposes prior to September, 1924, when it was acquired by Austin and Smith who in 1925 made various changes in the buildings and erected some eighty bath houses. Austin acquired Smith's interest in 1925 and until 1927 accommodated some boarders, rented cottages and offered bathing facilities. In 1929 the island and mainland lot were acquired by an incorporated club which operated during the summers of 1929, 1930 and 1931; then, due to financial difficulties, the club conveyed the properties back to Austin. Thereafter a club was conducted at varying annual rates until 1936, in which summer the island was operated as a night club or place of entertainment, a purely business enterprise. During that summer the surrounding residents were greatly annoyed and disturbed by the parking of cars on the mainland lot and the conduct of guests of the island going to and from the lot, and upon their complaint in the spring of 1937 the building inspector, who is the enforcement officer under the zoning regulations, advised the owners that both the night club and parking were in violation of the regulations and ordered that only permitted use be made of the island and the lot. As a result no use was made of the latter for parking purposes during the summer of 1937. During the summer of 1938 the island was first operated as a "so-called" hotel, restaurant and commercial beach resort and later as a hotel and "so-called" club.

In 1928 the plaintiff took a mortgage from Austin for $25,000 covering the island only, which mortgage was specially made subject to the zoning regulations. It acquired the island and the mainland lot, by foreclosure of this and other mortgages subsequently taken by it, in June, 1938. On August 3, 1938, the building inspector ordered the plaintiff to cease using the mainland lot for parking purposes. The plaintiff appealed from this order to the board of appeals and at the same time applied to that board for an order varying the zoning regulations so as to permit the use of the lot for parking purposes in connection with the island. The board of appeals sustained the order of the building inspector and refused to grant the variance requested and the plaintiff appealed therefrom to the Superior Court which, upon conclusions hereafter stated, dismissed the appeal.

It appears from the record that extended hearings were had by the building inspector before issuing his order and by the board of appeals, at both of which the uses to which the island had been and was being put and the effects of parking on the mainland lot were thoroughly presented. The evidence as to the latter was similar in effect to that before the Superior Court on appeal, from which the latter found, in addition to the facts above stated, that the use of the lot for parking purposes was a source of great annoyance and disturbance to the peace and comfort of the surrounding residents during the summer of 1938. The lot is in open view of these residences; from thirty to one hundred cars were parked there daily and many times late in the evening and between one hundred and three hundred people a day would frequently use the lot for parking facilities. The surrounding residents were greatly annoyed and disturbed by the parking at all hours, by the noise caused by stopping and

starting of cars, the grinding of gears, the sounding of signal horns and the shouting of people back and forth between the parking place and the island, the gleaming of lights into bedrooms and the coming and going of people to and from the parking space and the litter of papers and refuse at that space and around the neighboring residences.

The relevant provisions of the building zone regulations are the following: Section II. "In a residence zone, . . . no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses: 1. Dwellings or tenements. . . . 2. Boarding houses and rooming houses. 3. Hotels. . . . 6. Clubs, except clubs the chief activity of which is a service carried on as a business. . . . 9. Parks and playgrounds. . . . 11. Accessory uses customarily incident to the above uses, the term 'accessory use,' however, not including a business, or any building or use not located on the same lot with the building to which it is accessory. . . . A garage or group of garages for more than three motor vehicles shall not be permitted as an accessory use. . . ." Section XVII. Definitions. "d. A 'lot' is a parcel of land occupied by one building and the accessory buildings or uses customarily incident to it, including such open spaces as are required by these regulations, and such open spaces as are arranged and designed to be used in connection with such building. . . ."

The first issue on this appeal is that raised by the contention of the plaintiff that Shore Island and the mainland lot are so located as to come within the above provision [Section II(11)] concerning accessory uses. The plaintiff as owner of the island and the lot, by virtue of grants from the state to prior owners (13 Special Laws, p. 905, 18 id. p. 670) has a right to con-

struct sea walls "between high and low water mark" in front of these properties, respectively, and to fill in the space inside the wall, provided such sea wall and filling "shall not impede public navigation," the land in that space being also granted. The plaintiff claims that these grants so connect the island and the mainland lot that the use of the latter for parking accessory to the use of the island is to be regarded as "located on the same lot." This claim depends upon a construction, contended for by the plaintiff, that the special acts grant to it the fee of land below high water mark even before the building of sea walls and so as to connect the island and the parking lot regardless of whether or not a sea wall has been built. This interpretation is inadmissible; these grants clearly contemplate that the space, the acquisition of fee title to which by the owner of the upland is provided for, is limited to that between high water mark and the sea wall when it is constructed, and that such title is not to attach until the wall has been erected. The finding is that no sea walls have been built under these grants and, in consequence, the further finding that the plaintiff has no fee title beyond high water mark must stand.

It is to be noted, also, that the construction of a sea wall is authorized only "between high and low water mark," from which it is to be inferred that, as to each of these properties, there is a low water mark beyond which no wall could be built or fee title acquired. The like is also indicated in *Cole* v. *Austin*, 107 Conn. 252, 265, 266, 140 Atl. 108, which concerned this same island and the mainland shore. See also 330 Supreme Court Records & Briefs, back page 308. Also, each of the legislative grants contains a provision that the sea wall and filling in "shall not impede public navigation." The finding, which the record sus-

tains, is that the waters between the island and the mainland lot are navigable at high tide and that boats navigate them and tie up to the town dock, which is immediately adjacent to the mainland lot. See also *Cole* v. *Austin,* supra, 265. The restriction against impeding navigation obviously would prevent such location of sea walls as would enable the owner of the island and the parking lot to fill in to an extent which would connect the two parcels; any such connection also would encroach upon the riparian rights of other owners of abutting upland and the rights of the public to access by water to the town dock. An additional consideration is that, even if the fee of the land below high water mark lying between the island and the mainland lot could be regarded as being in the plaintiff, because of its subjection to public rights of navigation occupancy of the mainland tract for purposes accessory to the island could no more be held within the intent of Section II(11) than would tracts on the opposite sides of a public highway. The conclusion of the trial court that the mainland lot and the island do not constitute one lot under the zoning regulations is unassailable and justifies the order of the building inspector and the action of the board of appeals in affirming it.

The alternative application by the plaintiff to the board of appeals to vary the application of the zoning regulations as regards the mainland lot so as to permit its use for parking purposes as accessory to the island was brought under the provision of § 428 of the General Statutes that "if there shall be difficulty or unreasonable hardship in carrying out the strict letter of [the] ordinance, said board shall have authority, in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance . . . relating to the . . . use of land, so

that the spirit of the ordinance . . . shall be observed, public safety and welfare secured and substantial justice done." So much of the evidence before both the board of appeals and the Superior Court, and of the finding on this appeal, as pertains to the uses to which the land and buildings on the island have been put from year to year are significant, as regards the present inquiry, principally as bearing upon the need, for these purposes, of parking accommodations upon the mainland, and the variations in extent of parking and objectionable accompaniments thereof resulting from the activities conducted on the island, it appearing that these features have been aggravated somewhat proportionately as the limitations of use prescribed by the zoning regulations have been transgressed and exceeded. The important consideration is the general effect of the use of the lot for parking as auxiliary to the uses of the island. The purpose of the building inspector's order, from which the subsequent proceedings ensue, is to eliminate the objectionable results of the use of the parking lot; the effect of the uses made of the island upon those results and that of the order upon the utility and value of the island properties are consequential. It is noticeable, though, in that connection, that it appears from the finding, as above outlined, that although the use as a parking lot had been technically violative of the regulations since its inception in 1927 it had been permitted, unmolested, as long as the uses of the island reasonably accorded with the regulations, and it was only when conditions were aggravated by changed uses of the island that preventive measures were resorted to.

The nature and limitations of an appeal to the courts from the decision of an administrative board are too well established to require present elaboration.

It is a process to determine whether the board has acted arbitrarily or illegally or so unreasonably as to have abused its discretion, and that is the controlling question. *Blake* v. *Board of Appeals,* 117 Conn. 527, 532, 169 Atl. 195; *Holley* v. *Sunderland,* 110 Conn. 80, 82, 174 Atl. 330. While this discretion must be exercised with skill, sound judgment and probity, it is necessarily a liberal discretion, to be overruled only when it is found that the board has not acted fairly, with proper motives and upon valid reasons. *Blake* v. *Board of Appeals,* supra, 533; *St. Patrick's Church Corp.* v. *Daniels,* 113 Conn. 132, 136, 139, 154 Atl. 343. The power to authorize variations from the general provisions of a zoning regulation is granted only for relief in specific and exceptional instances, and is to be sparingly exercised. *Grady* v. *Katz,* 124 Conn. 525, 529, 1 Atl. (2d) 187.

The enabling act under which the zoning regulations were adopted, Public Acts, 1925, Chapter 242, § 3, now §424 of the General Statutes, prescribes that they shall be made "with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land . . . ," also, that they shall be designed, inter alia, to promote health and the general welfare. It is unquestioned that the regulations here involved are appropriate, in the above-mentioned respects, in their general application to the conditions obtaining in the adjacent territory which is residential in character. Under § 428 of the General Statutes a limitation upon the authority to vary the application of a regulation is that the variation shall be in harmony with the spirit of the ordinance and that public safety and welfare shall be conserved and substantial justice done. The primary purpose of zoning is to

promote the health, safety, welfare and prosperity of the community. *Strain* v. *Mims,* 123 Conn. 275, 286, 193 Atl. 754.

"Disadvantage in property value or income, or both, to a single owner of property, resulting from the application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship." *Thayer* v. *Board of Appeals,* 114 Conn. 15, 22, 157 Atl. 273; *Grady* v. *Katz,* supra, 529; *Osborn* v. *Darien,* 119 Conn. 182, 185, 175 Atl. 578. However, it is an element in the situation which is entitled to fair and careful consideration. *Strain* v. *Mims,* supra, 286. The finding is that the value of the island and the mainland lot with a parking use privilege would be considerably greater than without it, and that the loss to the plaintiff which may be caused by enforcement of the regulation would be purely financial, but it is also found that if parking is permitted "the value of the surrounding residences will be greatly depreciated." Therefore, if effect upon property values was to be made a criterion, the loss accruing, from the desired relaxation, to numerous owners of residence property in the neighborhood would have to be accorded weight against that of the plaintiff through application of the regulation. The predominant consideration, however, is the probable effect of the permission which the plaintiff seeks, as indicated by the experiences of the recent past. These manifestly are so subversive not only of property values but also of the comfortable and peaceful occupancy of homes, which the residents of such a community as this are entitled to expect and to have, and of their general welfare and even health, as abundantly to sustain the board of appeals in exercising its discretion by deny-

ing the variation sought, and the conclusion of the trial court that, in so doing, they did not act arbitrarily, illegally, or unreasonably.

The plaintiff argues to the effect that the incidents of parking are no more objectionable than those attending the public park which, it is found, borders the residential section on the north and in which parking, various athletic sports, and bathing are allowed. However, by the regulations concerning residence zones [Section II(9)], parks and playgrounds are expressly permitted and it is found, upon sufficient evidence, that the character of the terrain between the park and the residential area in the vicinity of the parking lot is such that such noises as arise from the activities in the park cause little, if any, annoyance to the residents.

Facts disclosed by the record strongly suggest that the value, in amount, of the plaintiff's property depends materially upon whether it must be used, as it apparently was at the time the regulations were adopted and for some time thereafter, for purposes thereby permitted, or can be utilized as virtually a public beach resort catering to persons patronizing it merely for the day or evening—patently a nonconforming use—and that the objectionable accompaniments of use of the parking lot have developed from attempts to accomplish the latter purpose. It also may well be that it was the increased traffic and congestion resulting from these endeavors which precipitated the prohibition of parking on streets leading to the island and parking lot. It seems not improbable, as intimated in argument by defendant, that, if the island should be permanently devoted to conforming uses only, parking facilities appropriate thereto might not be withheld, but on the present record the decision

of the board of appeals and its affirmance by the Superior Court must be sustained.

There is no error.

In this opinion the other judges concurred.