On September 4, 1936, the Town of East Haven adopted a zoning ordinance pursuant to law. The purpose sought to be accomplished, among others, included the promotion of "health and the general welfare" of the community. As a result of the adopted ordinance, East Haven, as a geographical area, was divided into four classes of zones. Residence "A" zone, so-called, denotes the highest classification in the zoning arrangement of the town.
Section XV of the ordinance established a board of appeals and confers authority upon said board "in a specific case, after public hearing, and subject to appropriate conditions and safeguards, [to] determine and vary the application of the regulations herein established, in harmony with their general purpose and intent, as follows: .... (10) .... so that substantial justice may be done. This authority shall be exercised in a manner to secure the public health, safety and welfare, solely in instances where there are practical difficulties and unnecessary hardships in the way of carrying out the strict letter of these regulations."
On January 27, 1941, the appellant Louis Defelice, for the sum of $5,500 bought and acquired title to 12 acres of land in East Haven from one Leroy R. Page of that town. Mr. Defelice was and is president, treasurer and principal stockholder of L. G. Defelice Son, Incorporated (formerly known as the New Haven Road Construction Co.), a Connecticut *Page 20 
corporation, being the other named appellant in this case. The aforesaid 12 acres are a part of an original tract of land comprising some 40 acres which was owned by the Page family for many years. The said Leroy R. Page acquired title to the entire tract upon the death of his mother, Jessie C. page, in 1928, she having acquired title thereto in 1921 upon the death of her husband, George P. Page, father of Leroy.
Commencing with July 7, 1934, Leroy began to sell off parcels of the original tract as follows:
 (a) July 7, 1934, and June 8, 1935, to Mill Plain Company, totalling ............ 3 acres
 (b) November 20, 1934, to State of Connecticut, about ....................... 2 acres
 (c) April 17, 1936, to State of Connecticut, about .................................... 2 acres
 (d) December 19, 1936, to Charles Maturo, about .................................... 1/2 acre
 (e) December 19, 1936, to Mill Plain Company, about ........................... 1 acre
 (f) January 27, 1941, to Louis Defelice (one of the appellants) .................. 12 acres
 (g) January 27, 1941, to Mill Plain Company .................................. 3 acres
 (h) March 7, 1941, to State of Connecticut ... 5 acres -------------
 Approximate total of land sold from original tract ............................... 28 1/2 acres
Leroy Page still owns out of the original tract:
 (i) Land west of Defelice 12 acres whereon farm house is located ............ 10 acres
 (j) Land at southwest corner of original tract which may also be designated as northeast corner of Maple and Rock Streets ............................. 1 1/2 acres -------------
 Approximate total of land of original tract still owned by Leroy Page .............. 11 1/2 acres
The original Page tract is located on the south side of the Old Foxon Road in East Haven, which road converges with a public highway known as Route 80, a main highway for *Page 21 
vehicular traffic proceeding out of and to New Haven, either to or from points located in northeastern Connecticut or Rhode Island and/or Massachusetts. The point of contact of the Old Foxon Road and Route 80 is more or less in the vicinity of the northeastern portion of the aforesaid 12 acres now owned by Mr. Defelice. Old Foxon Road runs in a general northeasterly and southwesterly direction and Route 80 substantially in an easterly and westerly direction.
The appellants have appealed to this court from the action of the appellee board on July 15, 1941 (following a public hearing on July 9, 1941) in denying their appeal to said board for permission to erect a sand classifier on said 12 acres now owned by the appellant Louis Defelice in his individual capacity since January 27, 1941.
The trial of this appeal occupied the court for several days in February last. Appellants' counsel, counsel for intervening property owners (as appellees), and the town counsel of East Haven on behalf of the appellee board, have now furnished the court with elaborate and detailed briefs. Also, the court with counsel inspected the premises in question and the surrounding neighborhood on April 3, 1942. It would serve no useful purpose for the court to detail herein all the subordinate facts which presumably were before the board and of which its members took cognizance and upon which evidence was offered in the trial of the appeal by virtue of liberal rulings.
The transcript of three-quarters of the evidence heard by the court in February and furnished by the appellants exceeds 400 pages. Were the court, therefore, to attempt to set out the subordinate facts, this memorandum would indeed become of inordinate length. The parties are entitled to be advised of the court's conclusions without undue delay and to this end the memorandum of decision is devoted.
In this appeal from the action of the appellee board the sole question presented is "whether the board has acted arbitrarily or illegally or so unreasonably as to have abused its discretion, and that is the controlling question." First NationalBank Trust Co. vs. Zoning Board of Appeals,126 Conn. 228, 237, citing Blake vs. Board of Appeals, 117 id. 527, 532, and Holley vs. Sunderland, 110 id. 80, 82. This court is not permitted "by retrial de novo, to substitute its finding and *Page 22 
conclusions for the decision of the board." Blake vs. Boardof Appeals, supra, p. 532. Neither can this court "upon facts found by itself or upon the record of the proceeding before the board, substitute its discretion for that reposed in the board." Colonial Beacon Oil Co. vs. Zoning Board of Appeals,128 Conn. 351, 355, citing DePalma vs. Town Plan Commissionof Greenwich, 123 id. 257, 266. "While this discretion [vested in the board] must be exercised with skill, sound judgment and probity, it is necessarily a liberal discretion, to be overruled only when it is found that the board has not acted fairly, with proper motives and upon valid reasons."First National Bank Trust Co. vs. Zoning Board of Appeals,supra, p. 237, citing Blake vs. Board of Appeals, supra, p. 533, and St. Patrick's Church Corp. vs. Daniels, 113 Conn. 132,136. So also, there is a presumption that a zoning board has in fact acted with fair and proper motives, skill and sound judgment. Strain vs. Nims, 123 Conn. 275, 285; St. Patrick'sChurch Corp. vs. Daniels, supra, p. 139; Burr vs. Rago,120 Conn. 287, 291.
As noted previously, the board had before it for consideration the propriety of the erection of a sand classifier on the 12 acres owned by Mr. Defelice. The proposed classifier is what is commonly known as a "wet" classifier. It is of steel construction, 106 feet long, 85 feet wide, 40 feet high, contains a floor area of 2,000 square feet, and weighs a minimum of 44,000 pounds exclusive of the float, pump house, pipe and footings. The classifier as such would be bolted or attached to 32 concrete bases in the ground. It would operate by means of a suction pump forcing a mixture of 90% water and 10% solids through a pipe to its top, which process removes all impurities from the sand which becomes separated into various classifications of varying purity for commercial purposes.
It could be found that the sand put through the foregoing "process" is commercially worth 50 cents per cubic yard in excess of the value in its natural state before passing through the classifier. There is no question but that the proposed classifier cannot operate successfully without water and would in fact use vast quantities every minute. The water required would be forced out of the earth and after it served its purpose would be expelled from the classifier and returned to the deeply excavated surface of the ground, resulting in the creation *Page 23 
of a lake several feet in depth which would eventually cover most, if not all, of the 12 acres in question.
The proposed classifier has cost the appellants approximately $20,000.
what was the basis of the board's action in denying permissionde erection of said classifier? Was it because it concluded, upon conflicting evidence, that prior to the enactment of the zoning ordinance on September 4, 1936, the 12 acres in question had not acquired the status of property used as a sand pit and hence such use was not a permissible non-conforming use at the inception of the zoning regulations as to be permitted as such in a Residence "A" zone, sand classifier or no sand classifier? Or did the board feel that although the 12 acres in question had sufficiently acquired the status of property used as a sand pit prior to September 4, 1936, and hence could be legitimately used subsequent there to as a proper non-conforming use, nevertheless the erection and use of the proposed wet sand classifier would constitute, and have the attributes of, an undue and unreasonable extension of an already existing non-conforming use of the property in question? The foregoing questions in themselves suggest other questions that the board could, and probably did, consider preliminary to denying appellants' appeal.
The minutes of the public hearing before the board on July 9, 1941 (Ex. B), while lengthy, leave much unsaid. There were no minutes kept relative to the executive session of the members following the public hearing. Hence this court is unable to determine the specific basis of the board's action in denying the coveted permission. It would have been helpful if such minutes were made and preserved for future purposes, but not legally necessary. Levine vs. ZoningBoard of Appeals of Meriden, 124 Conn. 53, 57; Grady vs.Katz, Id. 525, 530; Perdue vs. Zoning Board of Appeals,118 Conn. 174, 178. Hence the long trial in this court. SeeSkarzynski vs. Liquor Control Commission, 122 Conn. 521,526; Levine vs. Zoning Board of Appeals of Meriden, supra,
p. 57; Grady vs. Katz, supra, p. 530. As indicated above, even the minutes of the public hearing were found at the trial on appeal not to be as adequate and full as they could have been.
There was evidence before the court that the use of the *Page 24 
proposed classifier would create a body of water — a lake, to be more exact, having a depth of several feet — which would in time cover most, if not all, of the 12 acres. This aspect is deemed to be of the utmost importance even if the board has concluded that the 12 acres had acquired the status of a legitimate non-conforming use de removal and sale of sand prior to the inception of the zoning regulations and the classification of the particular property as Residence "A" on September 4, 1936. No case cited by appellants' counsel, or uncovered by the court in independent research, has considered a subordinate fact of such tremendous significance.
It is true that the appellants tried the case on the theory that since 1932 the 12 acres had been devoted to the extraction therefrom of sand for commercial purposes, and that even after the adoption of the ordinance on September 4, 1936, sand had been removed apparently without complaint from any law-enforcing agency; that the proposed sand classifier is a necessary adjunct, in a modern sense, of the excavation and removal of sand; and that the conclusion of the board to the contrary was arbitrary, unreasonable and in violation of the constitutional rights of the appellants.
By and large the entire Page tract has been singularly favored by the forces of nature in so far as sand — excellent sand for the commercial market — is concerned. Exhibit C marks off the areas thereof now owned by grantees of a large part of the original tract who are, and have been, engaged in the business of extracting and selling sand therefrom. One such owner even employs a "dry" classifier in this under taking, but "dry" classifiers do not fall into the drastic category of "wet" classifiers which leave behind in their wake a lake for the blessing, or cursing, of an unpredictable posterity.
In passing, justice to the facts requires the observation that the present trouble resulting in litigation commenced in February or March, 1941, when appellants were commencing to install the concrete footings preliminary to erecting the classifier. The building inspector, who is also the zoning inspector, informed Mr. Defelice that it would be necessary to secure a permit for the undertaking. Such application was made and promptly denied, and the battle was on. A further observation is deemed proper at this time. Any removal of sand from the 12 acres, at any period whatsoever prior to the attempted installation of concrete footings in connection with *Page 25 
the proposed classifier, was done by the more ordinary and usual methods, to wit, picks, shovels and derricks. Moreover, it could be found that the use of the proposed classifier eliminates dust and its functioning could not be heard beyond 300 feet.
Appellees have contended, among other things, that the proposed classifier is in reality a sand factory; that it is a substantial departure from the screening of sand; that it not only removes stones but that it subtracts and withdraws foreign substances such as clay, minerals, silt and loam; that it does to sand what a laundry does to clothes. In short, their argument is that the use of the classifier would result in an undue extension of a non-conforming use even though the 12 acres had been subject to a non-conforming use in the ordinary sense when the zoning ordinance became effective on September 4, 1936.
Appellees also stress that the classifier will result in the creation of the aforesaid lake. They point out that the board must have taken into consideration the presence of the schoolhouse on the north side of Old Foxon Road, opposite the property in question, attended by children of the district, as well as the Community House nearby, and some private homes.
It does not appear what the appellants intend to do with the lake after it has been created. Certainly the sand business will have terminated. Now, a lake may confer certain benefits. Also, a lake may result in certain serious disadvantages to a community, the center of which is about three miles away. This court cannot assume the responsibility of saddling the Town of East Haven, and future generations of its residents, with a lake. The zoning board of appeals has acted, and its action should not be disturbed by a judge on the Common Pleas Bench.
Mr. Bassett in his treatise on the law of zoning points out that: "Zoning seeks to stabilize and protect and not to destroy.... Zoning has sought to safeguard the future, in the expectation that time will repair the mistakes of the past."Bassett, Zoning (1940) p. 105.
Mr. Metzenbaum in his equally important treatise has observed that: "Zoning does no more than apply the rules of good housekeeping to public affairs. It keeps the kitchen stove out of the parlor, the bookcase out of the pantry and *Page 26 
the dinner table out of the bedroom." (Quoted with approval by our Supreme Court in Chudnov vs. Board of Appeals,113 Conn. 49, 53. Metzenbaum, Law of Zoning (1930) p. 6.
There is no question but that the appellants are seriously aggrieved, financially and otherwise, by the action of the appellee board. But this aspect in itself does not alter the legal situation. See Thayer vs. Board of Appeals, 114 Conn. 15,22; Osborne vs. Darien, 119 id. 182, 185; First NationalBank Trust Co. vs. Zoning Board of Appeals, supra, p. 238. It is, of course, an element entitled to a fair and careful consideration (Strain vs. Mims, supra, p. 286; First National Bank Trust Co. vs. Zoning Board of Appeals, supra, p. 238) but for aught that appears it was considered by the board.
To disturb the action of the board would in effect be adopting a course of review not in accord with principles of law in cases of this character. The question is indeed one of vital importance. It is not the function of a trial court to make law but rather to follow the law. It may well be that the Supreme Court of Errors in its wisdom will be able to detect the existence of an error in the action of the board that has escaped the attention of this court. If error there be, it would be better for the Supreme Court to assume the responsibility of determining its existence and prescribing for its rectification. See fourth paragraph immediately above.
 Further discussion would serve no useful purpose. Judgment will enter affirming the action of the appellee board and dismissing the appeal.